UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AIMEE MARIE BENBYNEK
ON BEHALF OF C.R.E.,

                Plaintiff,

v.                                               **23-CV-514-A**
                                                       **DECISION AND ORDER**


KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                Defendant.
_____

### I.    Background

The Plaintiff Aimee Marie Benbynek, on behalf of C.R.E., her son and a child under the age of 18, brings this action against the Commissioner of Social Security (hereinafter the "Commissioner"), seeking judicial review of the Commissioner's determination denying C.R.E. Supplemental Security Income (SSI) under the Social Security Act. The parties have filed cross-motions for judgment on the pleadings, and the Plaintiff filed a reply. For the reasons set forth below, the Plaintiff's motion is **DENIED**, and the Commissioner's motion is **GRANTED**.

**A. Factual Background**

C.R.E. was born in 2005. He was a minor at the time of his application and his hearing. His alleged disability consists principally of hearing loss. His alleged disability onset date was October 22, 2019. (Dkt. No. 5, pp. 21-22).

**B. Procedural Background**

On October 29, 2020, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on behalf of C.R.E. (Dkt. No. 5, p. 21). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 28, 2022, Plaintiff, C.R.E., and their attorney appeared telephonically before ALJ Thomas Merrill. (Dkt. No. 5., pp. 33-52). On September 21, 2022, the ALJ rendered a written decision finding that C.R.E. was not disabled under the SSA. (Dkt. No. 5., pp. 18-32). On April 25, 2023, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Dkt. No. 5., pp. 5-11).

**C. The ALJ's Decision**

The ALJ determined, under step one, that C.R.E., who was born in 2005, had not engaged in substantial gainful activity since October 29, 2020, the date he first sought benefits. (Dkt. No. 5, p.22). Under step two, the ALJ determined that C.R.E., in fact, had a sever impairment, to wit, hearing loss. (Dkt. No. 5, pp. 22-23). Upon determining that C.R.E.'s impairments did not meet or equal one of the impairments listed in 20 C.F.R. 416.924, 416.925 and 416.926a (Dkt. No. 5, p. 23), the ALJ assessed whether C.R.E.'s impairments functionally equaled the severity of an impairment in the listings by evaluating the six functional equivalent domains set forth above. (Dkt. No. 5, pp. 23-28). In that regard, the ALJ concluded that C.R.E.'s only limitations were "less than marked limitation" in: (4) moving about and

manipulating objects; and (6) health and physical well-being.  (Dkt. No. 5, pp. 26-27). The ALJ found no limitation regarding the four other factors.  (Dkt. No. 5, pp. 24-26).

### D.  The Parties' Contentions

In seeking this Court's review of the ALJ's determination, Plaintiff argues the ALJ failed to develop the record by obtaining certain school records and a medical report.  Specifically, Plaintiff maintains that a remand is warranted on the ground that the ALJ failed to include as part of the record: C.R.E.'s educational records, including a 504 plan and a teacher questionnaire, upon which C.R.E.'s initial March 29, 2021, denial was based (Dkt. No. 5, p.92); as well as Pembroke Jr-Sr High School report, dated April 28, 2021, and a report from Dr. Mary E. Obear, MD,[1] dated May 1, 2021, upon which C.R.E.'s denial of his subsequent request for reconsideration were based (Dkt. No. 5, p. 108). *See*, Dkt. No. 6-1, p. 7.  Defendant argues that there was no error and that the ALJ's decision should be affirmed.  (Dkt. Nos. 9 and 9-1).

---

[1] Defendant's attorney has advised the Court that review of the May 1, 2021, submission from Dr. Obear in the electronic file reveals that it consists of a statement (made in response to an evidence request) that Dr. Obear has no records for C.R.E. in the requested timeframe. (Dkt. No. 9-1, p.13, n.4).  While Plaintiff's initial motion and memorandum included the absence of Dr. Obear's report—together with the absence of certain educational records—as supportive of their argument that the ALJ erred in failing to develop the record in this case (Dkt. No. 6-1, pp. 7, 9, 10), Plaintiff apparently abandoned such claim as its reply brief only cites the lack of C.R.E.'s school records as supportive of its claim that the ALJ abandoned his obligation to develop the record. (Dkt. No. 10, pp.1-6).

**II.     Legal Standard**

**A. Standard of Review**

In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not this Court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*.

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *42 U.S.C. § 405(g)*; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)("Congress has instructed ... that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive."). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (italics omitted) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The issue is not whether substantial evidence supports the

claimant's argument, but "whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (italics omitted).

### B. Legal Standard To Determine Disability

A claimant under the age of 18 seeking disability benefits is "disabled" within the meaning of the Act and entitled to disability benefits when such individual has a medically determinable physical or mental impairment or combination of impairments resulting in "marked and severe functional limitations ... and which has lasted or is expected to last for a continuous period of not less than 12 months." *42 U.S.C. § 1382c(a)(3)(C)*. Upon review, a district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. *42 U.S.C. §§ 405(g), 1383(c)(3)*; *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).

For claimants under the age of 18, the disability determination is made according to a three-step sequential analysis. *See 20 C.F.R. § 416.924(a)-(d)*. The first step requires the ALJ to determine whether the claimant is engaged in "substantial gainful activity" ("SGA"). *20 C.F.R. § 416.924(b)*. The second step requires the ALJ determine whether the child has a severe impairment defined as anything causing "more than minimal functional limitations." *20 C.F.R. § 416.924(c)*. The third step requires the ALJ determine whether the claimant's impairment or combination of impairments meets, or medically equals the severity of an impairment listed in *20 C.F.R. Part 404, Subpt. P, Appx. 1. 20 C.F.R. § 416.924(d)*.

If the ALJ determines the claimant's impairment or combination of impairments meets or equals a listing, then the claimant is considered disabled. *20 C.F.R. § 416.924(d)(1)*. If the ALJ fails to find the claimant meets or medically equals a listing, then the ALJ, in the alternative, considers whether the claimant's impairment or combination of impairments functionally equals a listing in the context of six domains of functioning including: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *20 C.F.R. § 416.926a(b)(1)*. Marked limitations in two domains of functioning or an extreme limitation in one domain of functioning constitutes a functional equivalence to a listed impairment. *20 C.F.R. § 416.926a(d)*. Further, for purposes of a functional limitation, a "marked" limitation in a domain means an impairment that "seriously" interferes with the "ability to independently initiate, sustain, or complete activities," *20 C.F.R. § 416.926a(e)(2)(i)*, and an "extreme" limitation in a domain means an impairment that "very seriously" interferes with the "ability to independently initiate, sustain, or complete activities." *20 C.F.R. § 416.926a(e)(3)(i)*.

In considering a disability benefits determination, the ALJ has an affirmative duty to develop the record. *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Where the ALJ fails to develop the record, remand is appropriate. *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir.1999). The ALJ has a "duty to investigate the facts and

6

develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) (citation omitted).

### C. Legal Analysis

Plaintiff correctly notes that the record indicates that there was a 504 Plan[2] from the Pembroke Central School District as well as a teacher questionnaire that were considered by the State agency pediatricians, and which were not part of the record before the ALJ. (Dkt. No. 6-1, pp. 7-8). While the reasons for the absence of these records is unknown, their contents are hardly a mystery. The evaluations from the State agency pediatricians do show that they considered the teacher questionnaire, and that such questionnaire showed that C.R.E. had no serious problems in any domain of functioning. (Dkt. No. 5, pp. 61-62; 76-77). Indeed, such records were considered at the initial and reconsideration levels by State agency pediatricians, and each of the physicians reached conclusions on C.R.E.'s functioning which were wholly consistent with that determined by the ALJ.[3] This

---

[2] "'A 504 plan summarizes accommodations made for students with conditions that affect their ability to learn, behavior, or emotional status that do not rise to the level of disabilities under the Americans with Disabilities Act.'" *Andrea L. H. o/b/o M.E.O. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01316(JJM), 2021 WL 9595952, at *1 (W.D.N.Y. Mar. 24, 2021)(quoting *Krause v. Kelahan*, 2020 WL 2838859, *4 (N.D.N.Y. 2020)). As C.R.E.'s mother testified before the ALJ, the only accommodation C.R.E received was having a hearing specialist check with his teacher once a month to make sure that there were no hearing-related concerns. (Dkt. No. 5, p. 47).

[3] Dr. Liu concluded based on his examination that C.R.E. had moderate limitations for activities requiring acute auditory accuracy, but could otherwise participate in social, educational, and entertainment activities at an age-appropriate level. (Dkt. No. 5, p. 343). Pediatrician B. Stouter, M.D., who reviewed the records in March 2021, concluded that C.R.E. had less than marked limitations in the domains of: (1) moving about and manipulating objects and (2) health and physical well-being, but no limitations

belies any argument that the ALJ's failure to consider such records was harmful and negates any speculation that such records would reveal that C.R.E.'s impairments were greater than the ALJ determined.

Moreover, the ALJ's had the benefit of testimony from C.R.E. and his mother about his functioning in school, rendering the underlying records and teacher evaluation superfluous to the ALJ's determination.  C.R.E. testified that school was going "all right" and his grades were mostly B's and C's. (Dkt. No. 5, p. 40). He indicated that he had no difficulty understanding or completing homework assignments. (Dkt. No. 5, p. 43).  His problems with hearing during school were usually from the desk shields that had been used during the Covid pandemic, but the school was starting to take them down. (Dkt. No. 5, p. 42).  He played basketball in a recreational league and enjoyed playing video games. (Dkt. No. 5, p. 40).  He had worked part time at a grocery store but decided to stop working during the Covid pandemic because "the numbers were going back up …[and] I was around so many people." (Dkt. No. 5, p. 44).

C.R.E.'s mother testified that he was "a good kid" who was pretty mature for his age and always well-behaved. (Dkt. No. 5, pp. 45, 47).  His teachers did not report any discipline or behavioral problems. (Dkt. No. 5, p. 46).  While his mother

---

in any other domain. (Dkt. No. 5, pp. 61-64). In May 2021 pediatrician I. Sinha, M.D., reviewed the medical records and reached identical conclusions. (Dkt. No. 5, pp. 76-78). Consistent with these medical opinions, the ALJ concluded that while C.R.E. had less than marked limitations in moving about and manipulating objects and in health and physical well-being, there were no limitations in any of the other domains. (Dkt. No. 4, pp. 23-28).

indicated that she thought his grades could be better and noted that he had missed assignments, she did not attribute missed assignments to any impairments but indicated that she felt "like he's maybe capable of just doing the stuff if put [sic] a little more effort into it."  (Dkt. No. 5, p. 46).  C.R.E. was in "all regular classes" with no special education services or accommodations, other than having a hearing specialist check with his teacher once a month to make sure that there were no hearing-related concerns. (Dkt. No. 5, pp. 46-47).  His mother testified that he had a good attention span and a good memory. (Dkt. No. 5, p. 48).

The ALJ also relied on medical records which showed C.R.E. had moderate hearing loss which responded well to treatment with hearing aids. An audiological evaluation in November 2019 at North Buffalo Hearing and Speech Center revealed hearing within normal limits sloping to moderately severe sensorineural hearing loss in both ears; C.R.E.'s word recognition was judged to be "excellent" in both ears. (Dkt. No. 5, pp. 276, 289).  The results were consistent with an examination from 20 months prior. (Dkt. No. 5, p. 289).  At the time C.R.E. was using behind-the-ear hearing aids, but he was judged to be a candidate for binaural receiver-in-ear hearing aids, which were ordered. (Dkt. No. 5, p. 277).  At a follow-up examination one month later C.R.E was reportedly "very happy" with the new hearing aids and was using them consistently. (Dkt. No. 5, p. 279).

Notwithstanding the ALJ's obligation to develop the record, *see, Shaw v. Chater*, 221 F.3d at 131, it is well-established that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete

medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d at 79 n. 5 (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir.1996) (where the ALJ had "already ... obtained and considered reports" from treating physicians, the ALJ "had before him a complete medical history, and the evidence received from the treating physicians was adequate for him to make a determination as to disability")).

"A challenge that the record must be supplemented by the ALJ will not prevail without an explanation of 'how it would have affected [the] case.' *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013). In this case, Plaintiff has provided no evidence that, [the] alleged missing records…would have changed the ALJ's decision regarding [claimant]'s disability." *Yanira F. D. obo H.J.G.F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1692-DB, 2022 WL 4356970, at *8 (W.D.N.Y. Sept. 20, 2022). The same is true here. Claimant has not even argued, much less demonstrated, that "the result would have been different had the ALJ possessed the records in question." *Hawkins v. Barnhart*, 356 F. Supp. 2d 359, 365 (S.D.N.Y. 2005).[4]

---

[4] Moreover, prior to the hearing, by letter dated January 31, 2022, plaintiffs' counsel advised the ALJ that counsel had requested additional records from, inter alia, Buffalo Public Schools and Pembroke Senior High School.  (Dkt. No. 5, pp. 271-272). A month later, on February 28, 2022, the date of the evidentiary hearing before the ALJ, plaintiff's counsel advised the ALJ that although the record was otherwise complete, they were still awaiting the school records (Dkt. No. 5, p.37), and as a result, the ALJ agreed to hold the record open for 14 days. (Dkt. No. 5, p.38).  Subsequently, on March 14, 2022, plaintiffs' counsel sent a third request asking the ALJ keep the record open for an additional 14 days since they were "still waiting on records from" Buffalo Public Schools and Pembroke Senior High School.  (Dkt. No. 5, pp. 273-274). No further mention regarding the school records was made by Plaintiff until the filing of Plaintiff's Motion for Judgment on the Pleadings in this action. (Dkt. No. 6).  The ALJ gave Plaintiff—minimally—an additional two months to secure the records, and having granted

Consequently, this Court concludes that the ALJ did not fail to discharge its duty to develop the record in this case and that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Docket No. 6) is **DENIED** and the Commissioner's motion for judgment on the pleadings (Docket No. 9) is **GRANTED**. Plaintiff's complaint is **DISMISSED** in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED**.

 _s/Richard J. Arcara_
 HONORABLE RICHARD J. ARCARA
 UNITED STATES DISTRICT COURT

Dated:  January 30, 2024
        Buffalo, New York

---

Plaintiff's such additional time, apparently did not hear further from Plaintiff regarding such records until after this decision was issued in in September of 2022. Indeed, the next time Plaintiff makes mention of the school records is in September of 2023, in Plaintiff's Motion for Judgment on the pleadings in this action. (Dkt. No. 6).  Under these circumstances the Court finds that "the ALJ satisfied h[is] duty to develop the record by holding the record open after the hearing and subsequently granting Plaintiff's request for an additional…extension." *Melton v. Colvin*, No. 13-CV-6188 MAT, 2014 WL 1686827, at *8 (W.D.N.Y. Apr. 29, 2014)(collecting cases); *see, Melissa I. o/b/o R.J.R.D. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1799 (WBC), 2022 WL 3358138, at *5–6 (W.D.N.Y. Aug. 15, 2022)(rejecting nearly identical claim regarding missing educational records).